BAUGHAN v. MORTGAGE & CONTRACT CO.

1. EQUITY—RESCISSION NOT MATTER OF RIGHT—DISCRETION OF COURT.

In equity, rescission is not matter of right, but rests in sound discretion of trial court.

2. SAME—SHORTAGE IN SIZE OF LOT—REMEDY—RESCISSION—PROPERTY DAMAGE.

Generally, in suit involving shortage in size of lot, where shortage does not seriously interfere with enjoyment of remaining portion of property, it is usually more equitable to decree property damage than rescission and accounting.

3. VENDOR AND PURCHASER—SHORTAGE—RESCISSION—ACCOUNTING—MONEY DAMAGES.

In suit for cancellation of land contract and for accounting, based on shortage of less than two feet in width of lot, where it appears that said shortage did not seriously interfere with enjoyment of remaining portion of property, decree denying cancellation and awarding plaintiffs $400 damages is affirmed, on appeal.

Appeal from Wayne; Spier (James E.), J., presiding. Submitted April 5, 1933. (Docket No. 16, Calendar No. 37,016.) Decided May 16, 1933.

Bill by Paul Baughan and another against Mortgage & Contract Company, a Michigan corporation, to rescind a land contract and for an accounting. From decree denying cancellation and granting money damages, plaintiffs appeal. Affirmed.

*Charles Bowles,* for plaintiffs.

*Goodenough, Voorhies, Long & Ryan,* for defendant.

NORTH, J. Plaintiffs, vendees in a land contract, by their bill of complaint herein seek cancellation of

the contract and an accounting. The defendant is the assignee of the original vendor. The relief sought was denied, and in lieu thereof damages were awarded to plaintiffs by the trial court. Plaintiffs have appealed.

In May, 1927, plaintiffs entered into the contract for the purchase of a three-family apartment fronting on Stoepel avenue in the city of Detroit. The vendor's agent represented to plaintiffs that the lot was slightly in excess of 35 feet in width. While contemplating the purchase, Mr. Baughan measured between two stakes at the rear of the property and found the width to be 35 feet. After the contract was consummated plaintiffs occupied the first-floor apartment and leased the two apartments in the second story. A little more than three years after the purchase plaintiffs' next-door neighbor on the south constructed a fence on what he claimed was the line between the two properties. Plaintiffs objected, but a measurement made by the parties satisfied Mr. Baughan that the fence was properly located. Thereupon Mr. Baughan made complaint to the defendant herein, and was referred by it to the subdivider from which the lot was purchased, the Robert Oakman Land Company. Upon taking the matter up with the subdivider, Mr. Baughan learned that there was a shortage in this portion of the plat, and that such shortage either in whole or in part was placed upon plaintiffs' lot. A survey was made, which disclosed that the width of the lot was 33.40 feet in front and 33.76 feet in the rear. The subdivider offered to pay $95 as an adjustment for the discrepancy, and this amount seems to have been paid to the defendant, but credit therefor to plaintiffs was not entered on defendant's books until approximately three weeks after plaintiffs had given notice of rescission. After hearing the testimony,

the trial judge, as noted above, declined to decree cancellation of the contract, fixed plaintiffs' damage by reason of the shortage in the lot at $400, and ordered the $95 paid by the subdivider together with the further sum of $305 credited on plaintiffs' contract in satisfaction of the damages decreed.

Notwithstanding appellants' claim that the narrowing of their lot interferes with their enjoyment of the remainder, in that it deprives them of a place for shrubbery, interferes with a clothes line, and results in other like inconveniences, we are fully satisfied that the trial judge made the proper disposition of the case. There is an alley in the rear of this lot, and the loss of this narrow strip of land has not impaired plaintiffs' means of ingress and egress to their property. Notwithstanding the shortage, plaintiffs' apartment building and garage are well within the lot lines. In equity, rescission is not a matter of right, but rests in the sound discretion of the trial court. *Hathaway* v. *Hudson,* 256 Mich. 694. In the instant case no claim is made, nor could there be, that the defendant, which is the assignee of the original vendor, was guilty of any fraud or misrepresentation. In cases of this character, if the discrepancy is such that it does not interfere somewhat seriously with the enjoyment of the remaining portion of the property, it is usually more equitable to decree property damage rather than rescission and an accounting. Especially is this true where years have intervened in which the property involved may have greatly depreciated in value.

"Instead of granting relief by way of rescission the court may and frequently does grant the purchaser an abatement from the purchase price in case of a deficiency in quantity, and the purchaser has been restricted to this form of relief and a

rescission of the transaction denied even where the vendor was guilty of fraudulent misrepresentations as to quantity." 27 R. C. L. p. 646.

See, also, 9 C. J. p. 1265; 57 A. L. R. 1508; *Steinbach* v. *Hill,* 25 Mich. 78.

The method by which the trial judge fixed the damages at $400 does not appear from the record. However, we are satisfied that the amount was ample. One of defendant's witnesses, Mr. Baylis, was associated with the land company which promoted this subdivision. His testimony, which is practically undisputed, in part is as follows:

"In 1930 Baughan came to see Mr. Robert, our auditor, and said his lot was short and wanted a cash settlement. He wanted $120 or $125. We figured it out and I suggested to him we would go as far as $95 on the shortage. That was agreeable to him provided the Mortgage & Contract Company would accept it. He said it was acceptable to him. I sent the money to the Mortgage & Contract Company when they called me. They accepted it."

Mr. Robert, the auditor of the land company, testified to the same effect. Mr. Baughan testified he was informed that the vacant lot was worth about $100 per front foot. As above stated, we think the record is such that the trial judge was justified in refusing cancellation, and further, that the damages decreed are adequate. At the oral argument appellee's counsel stated that it had abandoned its cross-appeal; and because decision in plaintiffs' appeal may rest upon what has already been said, we need not discuss other defenses urged.

The decree entered in the circuit court is affirmed, with costs to appellee.

McDONALD, C. J., and CLARK, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.